**ELDERS et ux. v. MONTGOMERY-WARD & CO., Inc.**

**No. 5406.**

Court of Appeal of Louisiana. Second Circuit.

Feb. 5, 1937.

Herold, Cousin & Herold, of Shreveport, for appellant.

Hendrick & Hendrick, of Shreveport, for appellees.

DREW, Judge.

Garland Elders and his wife, Mrs. Gladys Elders, instituted this suit for damages against the defendant, Montgomery-Ward & Co., Incorporated. Garland Elders appeared individually and as head and master of the community, and his wife, Gladys, appeared in her own individual capacity. They alleged that during the past several years they had purchased on numerous occasions articles of household furniture from defendant, paying part cash and the balance on terms of credit. They further alleged that on January 17, 1936, there was a balance due and owing by them to defendant in the sum of $60. They further alleged that defendant, through its agents and employees, on January 17, 1936, at about the hour of 4 p. m. entered plaintiffs' home without permission, without their knowledge or consent, and without any legal authority, and were in the act of removing from the house all of the furniture located therein; that after a part of said furniture had been loaded on a truck, Mrs. Gladys Elders, one of the plaintiffs, appeared at the scene and demanded that defendant's agents stop their illegal acts and that they replace in the house the furniture they had already loaded on the truck; that her protests and demands were ignored, and all the furniture located in the house was loaded on the truck and hauled away; that not only did they remove from the house the furniture upon which they had a claim, but also many articles which had been fully paid for and numerous things which had not been purchased from defendant, including a heater, end table, small rug, two rockers, baby high chair, and two dresser benches; that after the removal thereof they were without a cookstove on which to cook or a bed on which to sleep. They alleged the value of the furniture at the time of its removal by defendant to be $300. Garland Elders alleged that because of the illegal trespass and other acts of defendant, he was forced to seek a place to room and board for himself and family, consisting of his wife and one child; and that he was forced to pay $65 per month therefor. He further alleged that defendant's acts had caused him great inconvenience, humiliation, and embarrassment, and itemized his damages as follows:

Value of furniture removed, $300.

Room and board for January and February, 1936, $130.

Humiliation, embarrassment and inconvenience, $820.

Or a total of $1,250.

Mrs. Gladys Elders alleged as follows:

"* * * that for the past several months she has been in ill health and was recuperating from her illness at the time of the unlawful and illegal seizure and trespassing on the part of the defendant corporation, and that because of said unlawful actions she received a great shock to her nervous system which has made her highly nervous and that she was in a hysterical condition for several days and was confined to her bed suffering from nervous disorders and caused her to have a setback in her illness, all caused by the fault, negligence and unlawful action on the part of the defendant corporation, all of which will be more fully shown on the trial hereof.

"Plaintiff, Mrs. Gladys Elders, shows further that because of such illegal and unlawful action on the part of the defendant corporation, through its agents and employees, she has suffered mental anguish and she was greatly embarrassed and humiliated and has been placed and caused a great deal of inconvenience because of being deprived of her furniture, all of which

will be more fully shown on the trial hereof.

"Plaintiff, Mrs. Gladys Elders, more particularly itemizes her damages as follows:

Damages done to nervous system and mental anguish ......... $ 750.00

For embarrassment, humiliation, and inconvenience ........... 500.00

Total .................... $1,250.00

"All of which was caused by the fault and negligence and unlawful and illegal actions on the part of the defendant corporation through its agents and employees herein, all of which will be more fully shown on the trial hereof."

In answer to an exception of vagueness, plaintiffs itemized the list of furniture removed from their home by defendant, as follows:

One cookstove.
One bedroom suite.
One breakfast room suite.
One living room suite.
Rug and rug mat.
One bed springs.
One mattress.
One heater.
One end table.
One small rug.
Two rocking chairs.
One baby high chair.
Two dresser benches.

In answer, defendant denied the essential allegations of the petition. It alleged that all purchases made by plaintiffs were made under a written contract and that the amount due and owing by them is $65.52. Further answering, it admitted it removed certain articles of furniture from plaintiffs' home to the Herrin Transfer & Warehouse Company's place of business, in Shreveport, but averred that it was done at plaintiffs' request. It further alleged that its dealings with plaintiffs were through Mrs. Gladys Elders, exclusively, and that some time prior to the date the furniture was removed, Mrs. Elders had requested it to help her and her husband save the furniture which she feared was about to be seized for other debts; that it did attempt to assist her in borrowing the money with which to discharge their debts, but was unsuccessful; that due to Mrs. Elders' urgent appeal, it, through its general manager, suggested that the furniture be moved to a warehouse where it would be safe from the pursuit of other creditors; that the suggestion was heartily approved by Mrs. Elders, who requested that it be done immediately; and that pursuant to said arrangement, the furniture was removed from plaintiffs' home to the Herrin Transfer & Warehouse Company where it was stored under express instructions to segregate and keep it separate from any merchandise owned by defendant which might be in said warehouse; that the furniture was held at the said warehouse for plaintiffs' benefit; and that defendant had no knowledge that they were not pleased with the arrangement until this suit was instituted.

Assuming the position of plaintiff in reconvention, defendant alleged plaintiffs were indebted unto it in the sum of $65.52, being the balance due on said furniture, and prayed that the demands of plaintiffs be rejected and for judgment in its favor for $65.52, plus interest.

The lower court awarded judgment for plaintiffs in the amount of $200 each, with legal interest from judicial demand, and judgment for defendant on its reconventional demand in the amount of $65.52, with 5 per cent, per annum interest from November 1, 1935, until paid. Defendant was cast for all costs. Defendant has appealed from this judgment, and plaintiffs have answered praying that the judgment of the lower court be amended by increasing it to the amount sued for.

Counsel for appellant in brief admits that plaintiffs' furniture was unlawfully removed from their home. He says:

"Although the testimony of the plaintiffs' witnesses and those of the defendant is directly conflicting as to whether the property was moved without the express consent of Mrs. Elders, there is no evidence to the effect that Mr. Elders, the head and master of the community, ever directly consented to such removal.

"We concede that the property should not have been moved without the consent of the head of the community and to have proceeded to do so was an exercise of poor judgment on the part of defendant's agents. For this reason, we will admit that technically the removal was unauthorized, but we do earnestly submit that the quantum of damages allowed is entirely and grossly excessive, in view of all the facts and circumstances of this case."

The record not only discloses the fact that Mr. Elders did not consent to the removal, but also that it was removed over the protests of Mrs. Elders.

Plaintiffs, who were renting a part of the house owned and partially occupied by Mr. and Mrs. Bray, on Louisiana avenue, in the City of Shreveport, had received notice from Mr. Bray to vacate the premises. On January 17, 1936, they secured a truck from the Herrin Transfer & Warehouse Company to be used in moving their household effects to a house on Hope street. A part of the things had been loaded on the truck when defendant's credit man appeared on the scene and ordered the truck driver to place the articles back in the house and not remove them. Mrs. Elders, after arguing with the credit man about her right to remove the furniture on which there was a balance due plaintiff of $65.52 and not having any success, left her home and went to see the manager of defendant company at his place of business. At his suggestion she attempted to secure a loan from a finance company with which to pay both the landlord and defendant. Mrs. Elders was unsuccessful in her efforts, but did succeed in borrowing from a friend a sum sufficient to pay the rent she claimed to owe. Her landlord claimed a larger amount. On returning to her home, she found defendant's credit man having the furniture loaded in the truck of the Herrin Transfer & Warehouse Company, with the express purpose of transporting it and storing it in the Herrin warehouse. She protested and informed the credit man that he had no claim against part of the articles he was taking. However, her protests were without avail, and all the furniture, with the exception of an iron cot and a cedar chest, were placed on the truck and carried to the warehouse where it was stored. Plaintiffs' house was completely stripped of all furniture, including beds, cookstove, heater, etc. They were forced to go to Mrs. Elders' brother-in-law and ask for shelter and food, which was granted them upon their promise to pay $50 per month.

It is admitted that the furniture was taken without any legal process being resorted to and was done without authority of law.

There is testimony by the manager and credit man of defendant company to the effect that Mrs. Elders requested them to take the furniture and store it in order to assist her in defeating the landlord's rent claim, which he states to be $35, while plaintiffs claim it is $10. The testimony of these witnesses for defendant is to our minds most evasive and unreasonable, and little weight can be attached thereto.

Plaintiffs did not demand of defendant that it return the furniture to them, but the day after the removal they employed attorneys who filed this suit soon thereafter. Defendant contends in answer, and its manager so testifies, that it had no intention at any time of repossessing the furniture; that it stored same for plaintiffs' benefit and expected them to finish paying for it within the following 60 or 90 days, at which time the furniture would be returned to them. We gather from the unsatisfactory testimony offered by these witnesses that it was the purpose and intent of defendant to place the furniture where no additional rent claims could accumulate against it until it was paid for in full. This was entirely unnecessary, if defendant had had the right to do so, for the reason that its recorded chattel mortgage against the furniture would have primed any rent claim thereafter attaching to it.

The property taken was still in storage at the time of trial below, and we presume is there now. The value of this furniture is shown to be $300. It belongs to plaintiff Garland Elders, as head and master of the community, and he is entitled in law to have it restored to his possession in as good condition as when illegally taken, free of all transportation and storage charges; and for failure of defendant to restore it free of all charges, plaintiff is entitled to have reserved to him the right to sue for its value and the damages occasioned by defendant's failure to return it.

The next item of damage claimed by Garland Elders of $130 for room and board for two months cannot be allowed because the record discloses he had only promised to pay $50 per month, and it is not shown he could have paid rent and fed himself, wife, and child for a lesser amount. However, this item may be taken into consideration as an element of damage under the claim for humiliation, embarrassment, and inconvenience. There can be no doubt that plaintiffs were both greatly inconvenienced by being forced to cease housekeeping, due to the illegal acts of defendant, and seek shelter and food from an

in-law, and the condition in which they were left by defendant's acts was calculated to and did cause humiliation and embarrassment to plaintiffs, unless they are endowed with a different temperament than ordinary individuals have.

Garland Elders testified that all his fellow workmen knew of the incident, and it had caused him much embarrassment. Mrs. Elders was undergoing a shock and was very nervous at the time, due to the loss of her father by death a few days before, and the defendant's action in illegally taking over her protest the household furniture came at a most inopportune time and necessarily aggravated her nervousness. She was confined to her bed for several days after it was taken, and she testified that on that night she failed to sleep and spent the night crying.

There is no reasonable excuse shown for defendant's action, and it is responsible to plaintiffs for the damages caused in bringing upon them the inconvenience, embarrassment, and humiliation they have shown. While the judgment of the lower court does not show for what items claimed by plaintiffs damages were awarded, we presume it was for the humiliation, embarrassment, and inconvenience. Plaintiffs have been deprived of the use of their furniture for many months, which has made the inconvenience continuous. The award of the lower court to each plaintiff of $200, as damages under this claimed item of damage, we think fair and just and it will not be disturbed.

In answer to the appeal, plaintiffs have not asked that the judgment in favor of the defendant in reconvention be disturbed in any way. Therefore, it is not within our power to change the judgment in that respect.

It therefore follows that the judgment of the lower court as written be affirmed; and there is further judgment for plaintiff Garland Elders against the defendant ordering it to return to his possession all the property taken from his home in as good condition as when taken, free of storage and transportation charges; and for defendant's failure to do so, there is reserved to Garland Elders the right to sue for the value of the furniture and the damages occasioned by failure on the part of defendant to comply with this judgment; all costs to be paid by the defendant, appellant.